# UNREPORTED DECISIONS

# EXHIBIT   1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLERGAN, INC., and ALLERGAN SALES, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Civil Action No. 04-968 (GMS) |
| ALCON INC., ALCON LABORATORIES, INC., and ALCON RESEARCH, LTD., | ) ) ) |
| Defendants. | ) |

**ORDER**

1.    Allergan, Inc. and Allergan Sales, LLC (collectively, "Allergan") filed the above-captioned

action against Alcon Inc., Alcon Laboratories, Inc., and Alcon Research, Ltd. (collectively, "Alcon")

on August 24, 2004.  Allergan filed this suit for patent infringement pursuant to 35 U.S.C. §

271(e)(2).[1] The complaint alleges that Alcon infringes U.S. Patent No. 6,673,337 (the "'337 patent")

and U.S. Patent No. 6,641,834 (the "'834 patent") because it submitted a § 505(b)(2) application,

or paper New Drug Application ("paper NDA"), to the Food and Drug Administration ("FDA"),

---

[1] Section 271(e)(2) states, in pertinent part:

> [i]t shall be an act of infringement to submit – an application under section 505(j) of the Federal Food, Drug, and Cosmetic Act or described in section 505(b)(2) of such Act for a drug claimed in a patent or the use of which is claimed in a patent if the purpose of such submission is to obtain approval under such Act to engage in the commercial manufacture, use, or sale of a drug or veterinary biological product claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

35 U.S.C. § 271(e)(2)(A).

seeking approval of its proposed generic brimonidine tartrate ophthalmic drug product.[2]  (Compl. ¶¶ 14-15, 17.)  The complaint further alleges that Alcon acted without a reasonable basis for believing that it would not be liable for infringement of the '337 and '834 patents and, as such, its infringement of the '337 and '834 patents is willful.  (*Id.* ¶¶ 19, 23.)  Allergan requests injunctive relief and attorney's fees, pursuant to 35 U.S.C. § 285.[3]  The issue presently before the court is whether Allergan may assert a claim for willful infringement.

2.      Allergan contends that a willfulness claim is proper based on the totality of the circumstances.  Allergan further contends that the totality of the circumstances comprises many factors, including whether Alcon intentionally copied ALPHAGAN® P, whether Alcon exercised due care to avoid infringing Allergan's patents, whether Alcon relied on competent legal advice, and Alcon's behavior as a party to the litigation.  (D.I. 64, at 2.)  According to Allergan, its claim of willfulness is based the following: (1) Alcon's Paragraph IV certification was filed without reasonable basis; and (2) Alcon's conduct in the litigation demonstrates its lack of reasonable basis.  (*Id.* at 3).  Lastly, Allergan contends that the Federal Circuit's holding in *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004) does not foreclose a claim for willful infringement in Abbreviated New Drug Application ("ANDA") or paper NDA cases.  (*Id.*)

---

[2] Alcon also filed a certification with the FDA under 21 C.F.R. § 314.50(i)(1)(i)(A)(4), or Paragraph IV Certification, alleging that the '337 and '834 patents are invalid and/or not infringed by its product.

[3] Section 285 provides: "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  The Federal Circuit has recognized willful infringement as a type of misconduct that creates an exceptional case.  *See Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000) (citing *Beckman Instruments, Inc. v. LKB Produkter AB*, 894 F.2d 1547, 1151 (Fed. Cir. 1989)).

3.    Alcon asserts that the only act of infringement alleged in the complaint is the filing of its paper NDA with the FDA. According to Alcon, in light of the Federal Circuit's holding in *Glaxo*, "Allergan's conclusory allegation – standing alone – cannot support a charge of willful infringement." (D.I. 75, at 2.)

4.    The Federal Circuit first addressed the issue of willfulness in ANDA and paper NDA cases in *Yamanouchi Pharm. Co., Ltd. v Danbury Pharmacal, Inc.*, 231 F.3d 1339 (Fed. Cir 2000). In *Yamanouchi*, the court found that "[a]n ANDA [or paper NDA] filing by its very nature is a 'highly artificial act of infringement,' therefore, the trial court need not have elevated the ANDA certification into a finding of willful infringement." 231 F.3d at 1347. Nonetheless, the court held that the case was exceptional and awarded attorney fees to the plaintiff, based on the defendant's "misconduct in filing a wholly unjustified ANDA certification and misconduct during the litigation that followed. . . ." *Id.*

5.    The Federal Circuit addressed the issue again in *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339 (Fed. Cir. 2004), holding that "the mere fact that a company has filed an ANDA application or certification cannot support a finding of willful infringement for purposes of awarding attorney's fees pursuant to 35 U.S.C. § 271(e)(4)." 376 F.3d at 1350-51. In the *Glaxo* opinion, the court explained that in *Yamanouchi* it "determined that a baseless and 'wholly unjustified' paragraph IV certification in an ANDA filing, when combined with litigation misconduct, warranted an exceptional case finding." *Id.* at 1350. According to the court, "in *Yamanouchi* we did not agree that the generic company had engaged in willful infringement, but rather determined that an award of attorney's fees was permitted because the generic had filed numerous baseless filings supporting its fruitless and meritless arguments, both in its case at trial and in its ANDA certification." *Id.*

6.      In the present case, Allergan has not pointed to anything which would support a finding of willful infringement.  The only act of infringement alleged in Allergan's complaint is Alcon's allegedly baseless paper NDA filing and Paragraph IV Certification with the FDA.  Because a paper NDA filing cannot be considered willful, Allergan's complaint does not state any basis under which it could assert a claim for willful infringement.  Allergan, however, maintains that Alcon's change in position with respect to its written description defense set forth in its summary judgment motion, combined with the paper NDA filing, permits a claim for willful infringement.  The court disagrees.  As the Federal Circuit explained in *Glaxo*, a finding that a ANDA/paper NDA case is "exceptional" can be based on meritless filings combined with litigation misconduct, but a finding of willful infringement cannot.  Accordingly, the court will not permit a claim for willful infringement in this case.  That being said, the court will not foreclose Allergan from, at the appropriate time, seeking to prove additional facts that would support its claim of an exceptional case for which the court should award attorney's fees. *See Aventis Pharma Deutschland GmbH v. Cobalt Pharms., Inc.*, 355 F. Supp. 2d 586, 592-93 (D. Mass. 2005).

Therefore, IT IS HEREBY ORDERED that:

1.      A claim for willful infringement is not permitted in this case.

2.      Allergan's claim for willful infringement shall be stricken from the complaint.

Dated: July 26 , 2005                                  /s/ Gregory M. Sleet
                                                       UNITED STATES DISTRICT JUDGE

4

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ─────────────────────────── : | Hon. Stanley R. Chesler |
| ORTHO-McNEIL PHARMACEUTICAL, INC., | Civil Action No. 04-1689 |
| Plaintiff : | |
| : | |
| v. : | |
| : | **ORDER** |
| MYLAN LABORATORIES, INC., et al., : | |
| : | |
| Defendants. : | |
| ─────────────────────────── | |

<u>**CHESLER, U.S. District Court Judge**</u>

**THIS MATTER** comes before the Court upon Defendants' Motion for Judgment on the Pleadings Dismissing Plaintiff's Claim of Willfulness (docket item #16), and Defendants' Motion for Summary Judgment of Non-Infringment(docket item #22). The Court having considered the papers submitted by the parties, having heard oral argument, and for the reasons set forth in the record of oral argument on April 18, 2005;

**IT IS** on this 18th day of April 2005:

**ORDERED** that Defendants' Motion to Dismiss Plaintiff's Claim of Willfulness is **GRANTED**; and it is further

**ORDERED** that judgment is **RESERVED** on Defendants' Motion for Summary Judgment; and it is further

**ORDERED** that the parties are directed to contact the Court to schedule a Markman hearing.


_____s/_____
STANLEY R. CHESLER
U.S. District Court Judge

# EXHIBIT  3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

**ENTERED**

APR 0 1 2004

U.S. CLERK'S OFFICE
INDIANAPOLIS, INDIANA

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, | ) | |
| | ) | Civil Action No. 1:02-CV-1844-SEB |
| Plaintiff, | ) | |
| | ) | Judge Sarah Evans Barker |
| v. | ) | |
| | ) | Magistrate Judge V. Sue Shields |
| BARR LABORATORIES, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY

THIS CAUSE COMES before the Court on Defendant Barr Laboratories, Inc.'s Motion

to Bifurcate and Stay Discovery on Plaintiff Eli Lilly and Company's Willful Infringement

Claims. Having reviewed Defendants' motion and the related pleadings,

IT IS HEREBY ORDERED that Barr's motion to bifurcate Lilly's willfulness claims is

GRANTED and all discovery on Lilly's willful infringement claims is STAYED until

resolution of all liability issues.

Dated: March 31 , 2003

_Sarah Evans Barker_
Hon. Sarah Evans Barker
United States District Judge
United States District Court for the
Southern District of Indiana

Copy to:

Terri L. Bruksch
BARNES & THORNBURG
tbruksch@btlaw.com

L. Scott Burwell
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

Vincent L. Capuano
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave., N.W.
Washington, DC 20005

Paul S. Berghoff
S. Richard Carden
Nicole A. Fiorella
David M. Frischkorn
MCDONNELL BOEHNEN HULBERT &
BERGHOFF
300 South Wacker Drive
Chicago, IL 60606

Jan M. Carroll
BARNES & THORNBURG
jan.carroll@btlaw.com

Grantland G. Drutchas
MCDONNELL BOEHNEN HULBERT &
BERGHOFF
drutchas@mbhb.com

Thomas C. Fiala
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave., N.W.
Washington, DC 20005

James F. Hurst
George C. Lombardi
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601

Laura P. Masurovsky
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
laura.masurovsky@finnegan.com

David S. Forman
Charles E. Lipsey
Robert F. McCauley
FINNEGAN HENDERSON FARABOW
GARRETT & DUNNER, LLP
1300 I Street, N.W.
Washington, DC 20005-3315

Robert C. Millonig Jr.
STERNE KESSLER GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave, N.W.
Washington, DC 20005

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
mrabinowitch@woodmaclaw.com

Christine J. Siwik
WINSTON & STRAWN LLP
csiwik@winston.com

# EXHIBIT   4

28

RECEIVED
WILLIAM T. WALSH, CLERK

2003 MAR -6  A 11: 38

UNITED STATES
DISTRICT COURT

FILED

MAR 0 6 2003

WILLIAM T. WALSH
CLERK

ENTERED
ON
THE DOCKET -

MAR 07 2003

WILLIAM T. WALSH CLERK
By _____ (Deputy Clerk)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SMITHKLINE BEECHAM CORPORATION:
d/b/a GLAXOSMITHKLINE,                    :

        Plaintiff,              :

    v.                          :          Civil Action No. 02-3779(JWB)

TEVA PHARMACEUTICALS USA, INC.,           :          O R D E R

        Defendant.             :


    For the reasons set forth in the Court's Opinion filed

herewith,

    It is on this 5th day of March, 2003,

    ORDERED that defendant's motion for a separate trial and a

stay of discovery on willfulness and damages be, and it hereby

is, granted.


RECEIVED

MAR 13 2003

_____
JOHN W. BISSELL
Chief Judge
United States District Court

<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SMITHKLINE BEECHAM CORPORATION:
d/b/a GLAXOSMITHKLINE,
                                    :
              Plaintiff,            :
                                    :    Civil Action No. 02-3779(JWB)
         v.                         :
                                    :       O P I N I O N
TEVA PHARMACEUTICALS USA, INC.,     :
                                    :
              Defendant.            :

APPEARANCES:

    DRINKER BIDDLE & REATH
    By:  John J. Francis, Jr., Esquire
    500 Campus Drive
    Florham Park, New Jersey  07932-1047
    (Attorneys for Plaintiff)

    WOLF, BLOCK, SCHORR and SOLIS-COHEN
    By:  Robert J. Fettweis, Esquire
    744 Broad Street, Suite 1515
    Newark, New Jersey  07102

            -- and --

    KENYON & KENYON
    By:  James Galbraith, Esquire
         Steven J. Lee, Esquire
    One Broadway
    New York, New York  10004
    (Attorneys for Defendant)

**BISSELL, <u>Chief Judge</u>**

This matter comes before the Court on a motion by defendant Teva Pharmaceuticals USA, Inc. ("Teva") for a separate trial and a stay of discovery on willfulness and damages. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1338.

<u>FACTS AND BACKGROUND</u>

This motion arises from a patent infringement suit filed by plaintiff SmithKline Beecham Corporation d/b/a GlaxoSmithKline ("SKB") to protect its rights under U.S. Patent 4,602,017 ("'017 patent"). (Bateman Decl., Exh. 1). The '017 patent claims, <u>inter alia</u>, the compound 3,5-Diamino-6-(2,3-dichlorophenyl)-1,2,4-triazine, commonly known as lamotrigine. (Plaintiff's Br. at 2). The '017 patent also claims pharmaceutical compositions comprising lamotrigine and methods of treating convulsions or epilepsy using lamotrigine. (<u>Id.</u>) Plaintiff sells and markets lamotrigine under the trade name Lamictal. (<u>Id.</u>)

Under the Hatch-Waxman Act, a party who wishes to make a generic version of a drug protected by an unexpired patent must file with the Food and Drug Administration ("FDA") an Abbreviated New Drug Application ("ANDA") for the generic version. 21 U.S.C. § 355(j). The ANDA must include a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) ("Paragraph IV certification") stating that the patent is invalid and/or will not be infringed by the generic version. Filing a Paragraph IV certification is a

2

technical act of patent infringement.  35 U.S.C. § 271(e)(1)(A);
Eli Lilly & Co. v. Medtronic, Inc., 496 U.S. 661, 678 (1990).  In
addition to filing an ANDA with the FDA, the generic manufacturer
must give notice of the ANDA and Paragraph IV certification
("Paragraph IV notice") to the patent holder.  21 U.S.C. §
355(j)(2)(B)(i).  The Paragraph IV notice must include a detailed
statement of the legal and factual basis for the generic
manufacturer's contention that the patent is invalid or will not
be infringed by the generic version.  21 U.S.C. §
355(j)(2)(B)(ii).

The FDA may approve the generic manufacturer's ANDA unless
the patent holder files suit against the generic manufacturer
within 45 days of receiving the Paragraph IV notice.  21 U.S.C. §
355(j)(5)(B)(iii).  If the patent holder sues within 45 days, the
FDA may not approve the ANDA for 30 months, or until the patent
dispute has been resolved, whichever is earlier.  21 U.S.C. §
355(j)(5)(B)(iii).

In the case at bar, Teva filed ANDAs seeking FDA approval to
market generic versions of SKB's lamotrigine tablets and
lamotrigine chewable dispersible tablets ("CDT").  These ANDAs
were filed on April 1, 2002 and May 28, 2002, respectively.
(Francis Decl., Exhs 1, 2).  Pursuant to the Hatch-Waxman Act,
Teva submitted a Paragraph IV certification with each ANDA that

3

every claim except claim 5[1] of the '017 patent is either invalid or would not be infringed by the commercial manufacture, use or sale of the lamotrigine product covered in the ANDA.[2] (Francis Decl., Exhs. 1, 2). The FDA accepted Teva's ANDAs. Teva subsequently sent Paragraph IV notice to SKB in which Teva set forth the factual and legal bases for its contentions that the claims of the '017 patent are invalid and/or not infringed, pursuant to 21 U.S.C. § 355(j)(2)(B)(ii). SKB received Teva's Paragraph IV notices in June 2002 and August 2002 and timely filed separate infringement actions against Teva on August 5, 2002 and September 18, 2002. The cases were consolidated by this Court on November 27, 2002.

Because plaintiff SKB timely filed suit, the FDA is not permitted to approve Teva's ANDA for lamotrigine tablets until December 2004 nor its ANDA for lamotrigine CDT until February 2005. Until a generic manufacturer's ANDA has been approved, the manufacturer is precluded from commercially marketing the product covered by the ANDA. As such, Teva has not done so. On January

---

[1]    Claim 5 pertains to an injectable solution containing lamotrigine. (Bateman Decl., Exh. 1). As Teva's ANDAs cover only lamotrigine tablets and lamotrigine CDT, Teva asserts that this claim covering injectable solution is not infringed, and SKB appears to agree. (Bateman Decl., Exh. 5 at 6; Plaintiff's Br. at 3 n.2).

[2]    Teva's lamotrigine CDT ANDA also included a Paragraph IV certification that SKB's U.S. Patent No. 5,698,226 ("'226 patent") was invalid and/or not infringed, but SKB did not assert the '226 patent against Teva in the instant suit.

4

31, 2003, Teva filed the instant motion for a separate trial on the issues of liability and willfulness and for a stay of discovery on willfulness and damages.

**DISCUSSION**

### I. Bifurcation of Liability and Damages in Patent Cases

Pursuant to Federal Rule of Civil Procedure 42(b), a court may bifurcate a trial if it would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." The court's decision to bifurcate must be made on a case-by-case basis, taking into account various considerations of complexity, convenience and efficiency, prejudice to the parties and economy of resources. Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984); Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).[3] The movant bears the burden of demonstrating that

---

[3]    The district court in Valois of America, Inc. v. Risdon Corp. set forth a more detailed list of factors that a court should consider in deciding whether bifurcation of discovery and/or trial is warranted in a case such as the present suit:

> whether a stay of discovery is uneconomical and a waste of judicial resource, whether a needless delay will be created, the complexity of the case, potential juror confusion, the stage of the litigation at which the request is made, whether any delay in filing such motion was a tactical strategy, the overlap of evidence and witnesses between liability and willfulness, the prejudice to patent owner by delaying the ultimate conclusion of the case, the risk of prejudice as to the liability issues which

5

judicial economy would be promoted and that neither party would be prejudiced by bifurcation.⁴ Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 180 F.R.D. 254, 256 (D.N.J. 1997); F&G Scrolling Mouse, L.L.C. v. IBM Corp., 190 F.R.D. 385, 387 (M.D.N.C. 1999). Accordingly, bifurcation is unwarranted if it would result in prejudice to one party, duplicative effort, inconvenience to the parties and the court, undue delay or expense. (Id.)

Although bifurcation is the exception rather than the rule, it is common in patent litigation. See, e.g., Pfizer Inc. v. Novopharm Ltd., No. 00 C 1475, 2000 WL 1847604, *1 (N.D. Ill. Dec. 14, 2000) (citing Real v. Bunn-O-Matic Corp., 195 F.R.D.

---

may result from disclosure, and the prejudice of having counsel who wrote the opinions disqualified as trial counsel.

Valois of America, Inc. v. Risdon Corp., No. 3-95-CV-1850-AHN, 1998 WL 1661397, *3 (D. Conn. Dec. 18, 1998), cited in Baer, et al., supra, at 681.

⁴    A unique form of prejudice particular to willful infringement cases occurs where an "accused infringer [is] presented with a Hobson's choice between waiving the attorney-client privilege in order to mount an 'advice of counsel' defense and maintaining the privilege with the risk that it will be found to be a willful infringer if liability is found." Pfizer, 2000 WL 1847604 at #2. This situation has become known as a Quantum dilemma, after Quantum Corp. v. Tandon Corp., 940 F.2d 642, 643-44 (Fed. Cir. 1991). The court in Quantum counseled, "Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court in camera, reveal that the defendant is indeed confronted with this dilemma." (Id. at 644).

618, 620 (N.D. Ill. 2000)) (Bateman Decl., Exh. 8); <u>Johns Hopkins</u>
<u>v. Cellpro</u>, 160 F.R.D. 30, 33 (D. Del. 1995) ("Historically,
courts have found it worthwhile to hold separate trials on
liability and damages issues in patent cases."); Baer, et al.,
<u>supra</u>, at 676 ("[B]ifurcation is more common in patent disputes
than in many other types of litigation."); Steven S. Gensler,
<u>Bifurcation Unbound</u>, 75 Wash. L. Rev. 705, 725 (2000) (same).  In
addition, bifurcation in a bench patent trial "poses fewer
practical problems[] and is ... more easily granted" than in a
jury trial, which "the majority of district courts view ... as
impractical." Stephen A. Soffen & J. Anthony Lovensheimer,
<u>Discovery and Use of Opinions in Litigations</u>, 668 PLI/Pat 101,
124-25 (Nov. 2001). Here, the parties are seeking a bench trial.
The Court notes, however, that "the mere status of being a patent
case does not create a presumption or inference in favor of
bifurcation and separate trials." <u>F&G Scrolling Mouse</u>, 190
F.R.D. at 387.

## II.  Application

In the instant motion, defendant argues that (1) bifurcation
is especially appropriate in an ANDA case; (2) bifurcation is
appropriate because Teva has not sold the accused product and
therefore there are no actual damages; (3) willfulness is only
relevant to damages (attorneys' fees) so that bifurcation would
avoid potentially unnecessary discovery and trial, as well as

7

protect Teva from a "Quantum dilemma"; and (4) bifurcation will
not make the case more expensive to litigate.  Plaintiff argues
that (1) bifurcation is rare in ANDA cases; (2) bifurcation will
cause delay and additional expense; (3) there is overlap between
the issues to be bifurcated; and (4) Teva will not be prejudiced
if the case is not bifurcated because it has already provided SKB
with the statutorily required "detailed statement" setting forth
the factual and legal bases for its contentions on the merits.

   1.  Bifurcation in ANDA Cases

   Defendant cites to several unreported decisions in which
courts bifurcated ANDA matters, including one in this District:
Ortho-McNeil, et al. v. Teva Pharmaceuticals USA, Civ. A. No. 02-
2794(GEB) (D.N.J. Jan. 28, 2003) (Bateman Reply Decl., Exh. 15);
Pfizer, 2000 WL 1847604;[5] and In re '639 Patent Litig., Civ. A.
No. 97-12416-RCL, Slip. Op. (D. Mass. Dec. 6, 1999) (Bateman
Decl., Exh. 10).  Although they are not precedential, they are
nonetheless persuasive.  In each case, the court determined that
bifurcation was warranted either to prevent a Quantum dilemma or
in the interest of judicial economy.  However, this Court
recognizes that because each case is unique, "only the specific
facts and circumstances of the case before the court can provide
the answer to the question of whether the advantages of

_____

   [5]   This case was published in the United States Patent
Quarterly.  See Pfizer, 57 U.S.P.Q. 2d 1442 (N.D., Ill. 2000).

bifurcation outweigh the disadvantages." F&G Scrolling Mouse, 190 F.R.D. at 387.

Plaintiff cites a number of cases in which bifurcation was denied, but only one involves an ANDA: Knoll Pharmaceuticals Co., Inc. v. Teva Pharmaceuticals USA, Inc., No. 01-C-1646, 2001 WL 1795592 (N.D. Ill. Aug. 24, 2001). (Plaintiff's Br. at 4-5). In that case, the court denied bifurcation because it would need to empanel a second jury and the defendant did not offer any documents for in camera review. (Id. at *2). In the case at bar, the parties have requested a bench trial, which means that "the efficiency concerns do not loom so large. [The Court] will be the factfinder both as to liability and willfulness.... [so that] [t]he case will simply move, if necessary, from one issue to the next with a single factfinder." In re '639 Patent Litig. (Bateman Decl., Exh. 10 at 3).

Thus, the mere fact that this is an ANDA case does not preclude bifurcation. The Court next considers other factors such as efficiency, judicial economy and prejudice to the parties in determining whether bifurcation is warranted in this case.

    2. Efficiency and Judicial Economy

Defendant argues that bifurcating the trial and staying discovery on the willfulness issue will promote efficiency and judicial economy because if the '017 patent is found to be invalid, there would be no need for any additional proceedings on

9

willfulness or damages.  Further, even if the Court were to find
that the '017 patent is valid, a determination of willfulness is
relevant only to the calculation of damages.  Defendant Teva
argues that there can be no actual damages in this case, where
Teva has not yet marketed the products covered by its ANDAs;
therefore, a finding of willfulness would only generate an award
of attorneys' fees.  Plaintiff of course contends that
bifurcation will lengthen the proceedings and cause additional
delay and expense as there is significant overlap between the
issues.

    Because there is only one patent-in-suit, the issues are not
especially complex.  Moreover, "[a] case involving an [ANDA] ...
is less likely to be considered complex."  Baer et al., _supra_, at
688; _see also_ _In re '639 Patent Litig._, (Bateman Decl., Exh. 10
at 5).  Although plaintiff argues that this factor weighs in
favor of a unified trial, defendant contends that it signifies
that the liability portion could be resolved quickly, potentially
obviating the need for any additional proceedings.  _See Princeton_
_Biochemicals_, 180 F.R.D. at 256 ("'A preliminary finding on the
question of liability may well make unnecessary the damages
inquiry, and thus result in substantial saving of time of the
Court and counsel and reduction of expense to the parties.'"
(quoting _Smith v. Alyeska Pipeline Serv. Co._, 538 F. Supp. 977,
982-83 (D. Del. 1982))).  Should plaintiff prevail on liability,

10

however, both parties acknowledge that any additional discovery on willfulness would consist of "little more than a handful of documents and an additional witness or two." (Defendant's Reply Br. at 6 (quoting Plaintiff's Br. at 6)). Although in so stating plaintiff is attempting to minimize the burden that would be caused by trying both issues together, the Court agrees with defendant that plaintiff's arguments "belie its position that separate discovery and trial on willfulness would be time-consuming." (Defendant's Reply Br. at 6). The Court notes, however, that "if the damage phase will be very simple, bifurcation may not be justified." P&G Scrolling Mouse, 190 F.R.D. at 388.

Most importantly, the Court is not persuaded that there would be any overlap between the witnesses or evidence required to show that the claims of the patent-in-suit are invalid or not infringed and the witnesses who would likely testify as to willfulness. "[A] determination regarding patent infringement [] does not require a detailed inquiry into the elements of willful infringement." Princeton Biochemicals, 180 F.R.D. at 258; see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co., 520 U.S. 17, 25 (1997) (holding that proof of intent is not required under either literal or doctrine of equivalents infringement analysis). As defendant points out, a patent attorney who gave Teva advice about the patent-in-suit and/or a decision-maker at

11

Teva who received and relied upon that advice would likely testify as to willfulness;[6] outside experts in the relevant technology or individuals knowledgeable about the prior art would likely testify about validity. (Defendant's Reply Br. at 7). The Court is also not persuaded by plaintiff's rather tenuous arguments concerning its need for defendant's detailed financial information at this juncture. (Compare Plaintiff's Br. at 7-8 with Defendant's Reply Br. at 7-8). Indeed, the court in Princeton Biochemicals rejected the plaintiff's claim that commercial success constituted grounds for overlap: "The question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages." 180 F.R.D. at 259. Instead, the court reasoned that basic sales information about quantities sold was sufficient. (Id.) In this case, however, defendant has never marketed the product at issue and, in fact, mounts no serious challenge to the commercial success of plaintiff's drug Lamictal. (Defendant's Reply Br. at 8 ("SKB has been selling its lamotrigine tablets for many years.")) The Court rejects SKB's attempt to establish overlap through commercial success by relying on economic discovery from Teva.

_____

[6]    The opinion letter written by the patent attorney about the validity of the patent-in-suit also goes to willfulness; but defendant argues that plaintiff's discovery demand for this letter has caused a Quantum dilemma. (See Discussion, infra, section 3.

### 3.  Prejudice to the Parties

Defendant argues that it would be severely prejudiced if it had to waive attorney-client privilege and disclose its opinion of counsel before a determination of liability is made; in other words, defendant contends that it faces a classic "Quantum dilemma."  Plaintiff argues that defendant has not demonstrated that it would be so prejudiced and, moreover, that defendant would not be prejudiced by disclosure because it previously served SKB with the statutorily required "detailed statements" setting forth the bases of its contentions on liability issues.

As discussed above, a party faces a Quantum dilemma when

> [a]n accused infringer ... [is] forced to choose between waiving the [attorney-client] privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found.

Quantum, 940 F.2d at 644; see also Ortho-McNeil, (Bateman Reply Decl., Exh. 15 at 7-8), ("[T]he Court is mindful of the fact that allowing Plaintiffs to pursue discovery on the willful infringement issue may cause Defendant to prematurely waive its attorney-client privilege thereby possibly prejudicing its case.")  Although the discovery process is designed to minimize surprise at trial, if plaintiff were to gain access to Teva's opinions of counsel at this juncture, it would be provided with "insights not only to any vulnerabilities of the defendant[']s

13

positions, but to the defendant[']s likely trial strategy as well." In re '639 Patent Litig., (Bateman Decl., Exh. 10 at 5). As such, it is the law of this District that "willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights." Princeton Biochemicals, 180 F.R.D. at 258.

Finally, the Court rejects plaintiff's argument that Teva could not be prejudiced by disclosure of the opinion letter because Teva previously served SKB with the same information in its Paragraph IV notice pursuant to 21 U.S.C. § 355(j)(2)(B)(ii). If Paragraph IV notices were in fact "virtually verbatim copies" of the accused infringer's counsel's opinion (Plaintiff's Br. at 10), there would be no such thing as a Quantum dilemma:  "If the mere fact that the accused infringer had previously given the patent owner the bases of its liability contentions meant that no prejudice could flow from disclosure of privileged opinions, then willfulness would never be bifurcated from liability to avoid the Quantum dilemma." (Defendant's Reply Br. at 9-10).  Furthermore, in the words of Judge Wolfson in Princeton Biochemicals, "this Court need not decide whether there is a Quantum dilemma. Instead, this Court has averted any possibility of prejudice to defendant by reserving the question of willfulness pending a finding of liability." 180 F.R.D. at 260.

14

The Court has decided "to strike the balance of convenience in favor of bifurcation." Pfizer, 2000 WL 1847604 at *4. In camera examination of the documents at issue prior to resolving the bifurcation question is not required. 2 Attorney-Client Privilege in the U.S. § 9:48 (citing Home Elevators, Inc. v. Millar Elevator Serv. Co., 933 F. Supp. 1090, 1092 (N.D. Ga. 1996); IPPV Enter. v. Cable/Home Communication Corp., No. 91-1541-K(M), 1993 WL 186168 (S.D. Cal. Jan. 4 1993)). Bifurcated hearings may be ordered when judicially economical. (Id., citing Pfizer, 2000 WL 1847604 at *3); see also Ortho-McNeil, (Bateman Reply Decl., Exh. 15 at 7-8). The interests of efficiency and judicial economy, the fact that the parties have requested a bench trial, and plaintiff's failure to demonstrate overlap between the evidence required to establish liability and willfulness all weigh in favor of bifurcation. In addition, the risk of delay and extra expense are non-issues since any additional discovery subsequent to a finding of liability would admittedly be minimal. (Defendant's Reply Br. at 6; Plaintiff's Br. at 6).

15

## CONCLUSION

For the foregoing reasons, defendant's motion for a separate trial and a stay of discovery on willfulness and damages is granted.

JOHN W. BISSELL
Chief Judge
United States District Court

DATED: March 5, 2003

16

# EXHIBIT  5



# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ORTHO-MCNEIL, et al.,       :    Civil Action No.: 02-2794(GEB)

    Plaintiffs,           :

      v.              :      O R D E R

TEVA PHARMACEUTICALS USA,  :

    Defendant.          :

_____:

     This matter having come before the Court upon Motion of the Defendant Teva

Pharmaceuticals USA to Bifurcate Trial and to Stay Discovery [Docket entry #22], returnable

December 2, 2002; and Plaintiffs having submitted Opposition and a Sur-Reply; and Defendant

having submitted a Reply; and the Court having reviewed all parties' submissions and considered

the matter pursuant to FED. R. CIV. P. 78; and for the reasons stated in the accompanying

Memorandum Opinion; and good cause having been shown;

     IT IS on this ____ day of January, 2003,

     ORDERED that Defendant Teva Pharmaceuticals USA's Motion to Bifurcate Trial and to

Stay Discovery is granted; and it is

     FURTHER ORDERED that discovery on willfulness is hereby stayed and trial on

liability and willfulness will be bifurcated .

_____
JOHN J. HUGHES
UNITED STATES MAGISTRATE JUDGE

TOTAL P.04

FROM

NOT FOR PUBLICATION

ORIGINAL FILED

JAN 3 0 2003

WILLIAM T. WALSH, CLERK

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ORTHO-MCNEIL, et al., | : | Civil Action No.: 02-2794(GEB) |
| Plaintiffs, | : | |
| v. | : | |
| TEVA PHARMACEUTICALS USA, | : | MEMORANDUM OPINION |
| Defendant. | : | |

HUGHES, U.S.M.J.

This matter is before the Court upon the Motion of the Defendant, Teva Pharmaceuticals USA ("Defendant or Teva"), to Bifurcate Trial and to Stay Discovery pursuant to FED. R. CIV. P. 42(b). Plaintiffs, Ortho-McNeil Pharmaceutical, Inc., Johnson & Johnson, Pharmaceutical Research & Development, LLC, and Daiichi Pharmaceutical, Co., Ltd. ("Plaintiffs") oppose the Motion. The Court has reviewed the written submissions of the parties and considered the matter pursuant to FED. R. CIV. P. 78. For the reasons that follow, the Defendant's Motion is granted.

### I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, Daiichi Pharmaceutical Co., Ltd. is the owner of the '407 patent, known as Levaquin® that was licensed to Plaintiffs, Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson Pharmaceutical Research and Development, LLC. Defendant Teva filed an abbreviated new drug application ("ANDA") with the United States Food and Drug Administration ("FDA") in order to obtain approval to manufacture and market drug products containing levofloxacin. The ANDA included a Paragraph IV Certification asserting Teva's opinion that the '407 patent

FROM

was invalid, unenforceable, or not infringed. Subsequent to Teva's filing an ANDA, Plaintiffs filed the present action as authorized by 35 U.S.C. § 271(e)(2).

In the present action, Plaintiffs allege that Teva willfully infringed its U.S. Patent No. 5,053,407 ("the '407 patent") when Teva submitted an ANDA with the United States FDA in order to obtain approval to manufacture and market a generic version of Levaquin®. Specifically, Plaintiffs allege that Defendant's infringement of its Patent '407 is willful because Defendant was "[f]ully aware that a valid and enforceable patent protect[ed] the LEVAQUIN® products. . . [when it] deliberately created copies of [them] . . . ." (Pls.['] Br. at 2).

Teva challenges the validity of the '407 patent, owned by Plaintiff, Daiichi Pharmaceutical Co., Ltd. and argues that the patent is invalid. Teva has filed counterclaims seeking a declaration that the '407 patent is invalid and an award of attorney's fees. Additionally, Defendant states that it has yet to market or sell any product containing the ingredient in issue, and thus, there are no damages, nor are any damages sought by the Plaintiffs. Therefore, Teva brings the present Motion seeking an Order from this Court bifurcating trial and staying discovery on the willful infringement issue, arguing that separating the liability issue of validity from willfulness will promote efficiency, convenience and prevent prejudice. (Def.['s] Br. at 1).

On the other hand, Plaintiffs contend that bifurcation is the exception and not the rule in patent cases and where the issues of liability and willful infringement are intertwined, as here, the moving party has the burden of showing why bifurcation is necessary. Of course, Plaintiffs argue that Defendant has failed to meet the necessary burden to bifurcate trial and stay discovery on the issue of willful infringement. Defendant challenges Plaintiffs' position that liability and willful

2

infringement are intertwined and argues that willful infringement is "relevant only to the issue of attorney's fees pursuant to 35 U.S.C. § 285 . . . ." (*Id.* at 3). Therefore, Defendant argues that the issues of liability and willful infringement can fairly be separated for trial purposes.

In addition to the issues of liability and willful infringement being intertwined, Plaintiffs argue that bifurcating trial will impose unnecessary delay and burden upon the parties because of the costs of additional discovery, preparation, and trial. (Pls.['] Br. at 3, 6). To the contrary, Defendant argues that bifurcating trial and staying discovery on the willfulness issue will promote efficiency as well as judicial economy and offers three arguments to support its position. First, Defendant argues that should the '407 patent be found invalid, there will be no need for discovery or fact-finding on the willfulness issue because there would necessarily be no infringement, willful or otherwise. Second, Defendant contends that even if the '407 patent is found to be valid, a determination of willful infringement is relevant only to the issue of awarding attorney's fees. Lastly, Defendant asserts that attorney's fees are awarded only in exceptional cases of willful infringement and here, where there are no damages, there cannot be such a finding.

More importantly, Defendant argues that bifurcating trial and staying discovery will avoid the need for it to prematurely decide whether to waive attorney-client privilege in order to defend allegations of willfulness when the prevailing party on the invalidity issue has yet to be determined. Plaintiffs challenge Defendant's argument by reasserting that (1) bifurcation of trial will cause unnecessary delay and duplication of evidence and (2) the risk of disclosing privilege prematurely is a conflict that Defendant, itself, created when it used the same law firm for trial and opinion. Thus, Plaintiffs argue that the conflict created by Defendant itself does not justify

3

bifurcation. Nevertheless, Defendant requests bifurcation of trial and staying discovery on the willful infringement issue because without it, it would otherwise cause a significant risk of unfair prejudice. (*See* Def.['s] Mem. at 11).

**II.    DISCUSSION**

Pursuant to FED. R. CIV. P. 42(b), a court may bifurcate a trial if it would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]" FED. R. CIV. P. 42(b). "[T]he decision to bifurcate . . . is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir. 1978), *cert. denied*, 429 U.S. 955 (1978). The moving party has the burden of demonstrating that judicial economy would best be served by bifurcating the case, and that no party would be unduly prejudiced by having separate trials. *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997); *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D.Cal. 1992).

Bifurcation would be unwarranted if it would result in duplication of effort, inconvenience to the parties and the Court, undue delay, unreasonable expense, or prejudice. *Princeton Biochemicals, Inc.*, 180 F.R.D. at 256; *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 32 (D.Del. 1995).

**A.    Bifurcating Liability**

Federal courts have bifurcated patent cases when the party seeking bifurcation has demonstrated that the issues are complex and would involve the presentation of extensive evidence, which could result in jury confusion and prejudice to the parties. *Princeton*

4

*Biochemicals, Inc.*, 180 F.R.D. at 257; *Spectra-Physics Lasers, Inc.*, 144 F.R.D. at 101; *B. Braun*

*Medical Inc. v. Abbott Laboratories*, 1994 WL 468155, at *1 (E.D.Pa. August 24, 1994).

In *Smith v. Alyeska*, the court noted:

> In the normal case separate trial of issues is seldom required, but in
> a patent infringement suit considerations exist which suggest that
> efficient judicial administration would be served by separate trials
> on the issues of liability and damages. The trial of the damages
> question in such a suit is often difficult and expensive, while being
> easily severed from the trial of the questions of validity and
> infringement of the patent. A preliminary finding on the question
> of liability may well make unnecessary the damages inquiry, and
> thus result in substantive saving of time of the Court and counsel
> and reduction of expense to the parties. Moreover, separate trial of
> the issue of liability may present counsel the opportunity to obtain
> final settlement of that issue or appeal without having reached the
> often time-consuming and difficult damages question.

*Smith v. Alyeska*, 538 F.Supp. 977, 982-83 (D.Del. 1982), *aff'd*, 758 F.2d 664 (Fed. Cir. 1984),

*cert. denied*, 471 U.S. 1066 (1985) (*quoting Swofford v. B & W, Inc.*, 34 F.R.D. 15, 19-20 (S.D.

Tex. 1963) *aff'd*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965)).

In the present case, the Court finds that the issues are not necessarily complex, as it

involves only one patent, specifically, the '407 patent. Additionally, there are no issues of

damages to be resolved because there has been no marketing or sale of the product.

Nevertheless, courts have considered and balanced other factors such as the prejudice that may be

caused for a party should bifurcation not be ordered. *See* FED. R. CIV. P. 42(b). Here, the Court

finds that while the validity of the patent at issue is not complex, the issue of "liability and

willfulness are two distinct causes of action" as the court found in *Princeton Biochemicals, Inc.*,

and thus have different elements which must be proved. *Princeton Biochemicals, Inc.*, 180

F.R.D. at 258 fn.3. Moreover, the Court finds that at this juncture, the potential prejudice to the

FROM

Defendant outweighs the potential waste of resources as the Plaintiffs suggest. Accordingly, the Court is unconvinced that there would be any substantial overlap or duplicity as a result of bifurcating trial and discovery with regards to liability and willfulness. Lastly, the Court agrees with the Defendant that once the validity of the patent is determined and infringement is or is not found, then the Court can speedily proceed with its determination of willfulness. Furthermore, the Court finds that bifurcation, while certainly not the rule but the exception, would nevertheless, promote efficiency and judicial economy in this particular case.

**B.     Willful Infringement and Exceptional Case Issue**

Defendant moves to bifurcate and stay discovery on the willful infringement/exceptional case issue arguing that a determination of the validity of the '407 patent will provide more focus as to discovery on the willful infringement/exceptional case issue. Defendant contends that there is no need to expend additional resources and burden parties regarding damages when Plaintiffs did not even seek damages in the present case. The Court agrees with the Defendant that conducting discovery on issues surrounding willful infringement is premature at this point, especially, when no damages have been sought by the Plaintiffs. Accordingly, there is no need at this time to determine willful infringement and even more so, the exceptional case issue which is related to a finding of willful infringement.[1] Therefore, the Court finds that a two-step process of

---

[1] Both Plaintiffs and Defendant have requested an award of attorneys' fees should either prevail in the lawsuit. An award of attorneys' fees in patent cases is granted only in exceptional cases where the infringement was found to be willful. However, a finding of willful infringement does not automatically mandate a court to award attorneys' fees. *Whelan v. A. Ward Enterprises, Inc.*, 2002 WL 1745614, at * 5 (E.D.Pa. July 23, 2002) (*citing Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992)). There are nine factors that the *Read* Court listed in determining whether to award an attorney's fees in patent infringement cases. *Read*, 970 F.2d at 827. At this time, the Court finds it unnecessary to even review those nine factors.

6

determining first the liability and then damages, if any, will not deter efficiency and judicial economy.

More importantly, the Court is persuaded by Defendant's argument that the issue of willful infringement should be bifurcated because discovery on that issue would involve the disclosure of attorney-client communications. In *Quantum v. Tandon*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) the Court stated:

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willingness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court, *in camera*, reveal that defendant is indeed confronted with this dilemma.

*Id.* at 644; *see also Princeton Biochemicals, Inc.*, 180 F.R.D. at 259. As federal courts in this District have properly held, "willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights." *Princeton Biochemicals, Inc.*, 180 F.R.D. at 258.

Moreover, the Court is unconvinced at this juncture that the proofs required to demonstrate Defendant's willfulness, when it infringed against Plaintiffs' patent '407, are intertwined with the proofs regarding the validity of the patent. Accordingly, the Court cannot foresee that there will be any significant overlapping of evidence. In addition, as the parties have

7

pointed out the fact that there is only one patent at issue in the present litigation should minimize any substantial duplication of evidence which might have increase costs. More importantly, the Court is mindful of the fact that allowing Plaintiffs to pursue discovery on the willful infringement issue may cause Defendant to prematurely waive its attorney-client privilege thereby possibly prejudicing its case. Therefore, the Court finds that bifurcating trial and staying discovery as to the issue of willful infringement/exceptional case is appropriate in this particular case.

## III.    CONCLUSION

For the reasons stated above, Defendant Teva Pharmaceuticals' Motion to Bifurcate Trial and Stay Discovery on the Willful Infringement/Exceptional Case Issue is granted. Discovery on willfulness is stayed and shall commence after the parties conduct a meeting and confer pursuant to FED. R. CIV. P. 26(f) to determine the timing and parameters of such discovery. In addition, trial on liability and willfulness will be bifurcated.

An appropriate Order accompanies this Memorandum Opinion.

Dated: January 28, 2003

8

# EXHIBIT  6



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1268047 (D.Del.)
**(Cite as: 2002 WL 1268047 (D.Del.))**

Page 1

☞

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ALLERGAN INC. and Allergan Sales, Inc.,
Plaintiffs,
v.
PHARMACIA CORPORATION, Pharmacia AB,
Pharmacia Enterprises S.A. and Pharmacia &
Upjohn Company, Defendants,
and
THE TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK, Additional
Defendant on Counterclaim in Reply.
No. Civ.A.01-141-SLR.

May 17, 2002.

MEMORANDUM ORDER

ROBINSON, J.

*1 At Wilmington this 17th day of May, 2002, having reviewed the various pending discovery motions and the papers submitted in connection therewith;

IT IS ORDERED that:

1. Columbia's motion for a protective order precluding plaintiffs from deposing and obtaining documents from John P. White, Esquire (D .I. 77) is granted.

a. Plaintiffs have subpoenaed Columbia's lead trial counsel, Mr. White, to appear for a deposition on the issue of inventorship of U.S. Patent No. 4,599,353 ("the '353 patent"). More specifically, plaintiffs contend "that the inventor of the '353 patent, with Columbia's full knowledge and participation through its attorneys, failed to credit one or more co-inventors who collaborated in and contributed to the conception and reduction to practice of the '353 invention." (D.I. 87 at 4) Plaintiffs argue that Mr. White has relevant information based on an amendment filed by Mr. White wherein he declares that "[a]pplicant is the sole inventor of the invention described and claimed

in the subject application." (*Id.,* Ex. 2 at 4) The amendment reflects facts as averred by the inventor in his declaration. (*Id.,* Ex. 3)

b. As a general principle, depositions of trial counsel are limited to those circumstances where "the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1987) (internal citation omitted). *Cf., Environ Prods., Inc. v. Total Containment, Inc.,* 41 U.S.P.Q.2d 1302, 1306 (E.D.Pa.1996) ("Impressions protected by the work-product doctrine may be discovered when directly relevant to the litigation and when the need for production is compelling."); *Bio-Rad Labs., Inc. v. Pharmacia, Inc.,* 130 F . R.D. 116, 122 (N.D.Cal.1990) ("[A]n attorney's opinion work product is discoverable where such information is directly at issue and the need for production is compelling."). Moreover, absent a *prima facie* showing of fraud, an allegation of inequitable conduct, in and of itself, does not vitiate the attorney-client privilege or the protections of the attorney work product doctrine. *See In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 806-07 (Fed.Cir.2000).

c. The court concludes that plaintiffs have not met their burden to demonstrate a compelling need for the requested discovery. Plaintiffs apparently contend, in support of their inequitable conduct contentions, that Mr. White knew or should have known that one or more co-inventors collaborated in and contributed to the conception and reduction to practice of the patented invention and was obligated to so inform the PTO. The court suggests that until such time as plaintiffs have demonstrated the truth of the matters asserted (i.e., there were co-inventors), Mr. White's knowledge is irrelevant. Because the issue of inequitable conduct is a matter for the court to determine, and because the factual predicate to the issue of inventorship can be pursued independent of Mr. White's testimony (through the depositions of the inventor and alleged co-inventors and through access to the documents that reflect the inventive process), the court declines to permit the deposition of Mr. White at this time.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1268047 (D.Del.)
(Cite as: 2002 WL 1268047 (D.Del.))

*2 2. Defendants' motion to compel the production of documents (D.I.82) is granted to the extent explained below.

a. Defendants have moved to compel plaintiffs to produce "all documents relating to the subject matter of three opinion letters provided by their counsel, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan, Henderson"), and to permit questioning of Allergan witnesses regarding the subject matter of those opinion letters." (*Id.* at 1) By way of background, plaintiffs have chosen to rely upon the opinions written by Finnegan, Henderson in defense of the claim of willful infringement. Plaintiffs have produced the three opinion letters and drafts thereof, and "all communications between Allergan and Finnegan regarding those letters as well as all of the materials that Allergan considered in connection with its reliance on the letters." Defendants seek, in addition to the above, "documents relating to [Allergan's] other infringement and validity analyses of the patents." (*Id.* at 3)

b. From the court's perspective, the question posed by this discovery dispute is whether the scope of a party's voluntary waiver is defined by the course of conduct between the party and its opinion counsel, or whether it is defined by the subject matter discussed in the opinion letters. The court concludes that it is the latter.

c. It is undisputed that,
[w]hen an alleged infringer decides to respond to a claim of willful infringement by offering evidence that he or she reasonably and in good faith relied on advice of counsel in making, using or selling the allegedly infringing device, then the advice becomes relevant and admissible. Documents and testimony relating to that advice are relevant in that they are probative of the alleged infringer's intent. They are admissible because the alleged infringer has waived the privilege as to the subject matter of the advice.
*Thorn EMI North Am., Inc. v. Micron Tech., Inc.,* 837 F.Supp. 616, 621 (D.Del.1993). In order to determine whether the alleged willful infringer "reasonably and in good faith relied on" the advice rendered by opinion counsel, it is appropriate to test the knowledge of the alleged willful infringer concerning the subject matter of the opinion. *Cf. id.* (the patentee should be entitled to discover facts relating to what the alleged willful infringer "knew and had concluded about the credibility, value and reasonableness of the opinions.").

d. Consistent with the above reasoning, the court concludes that the only equitable way for a patentee to test the knowledge of an alleged willful infringer (so as to test the reasonableness of its evaluation of counsel's opinions) is for the alleged willful infringer to disclose all of the information it possessed prior to or at the time it obtained opinions of counsel as to the subject matters discussed in such opinions. [FN1]

FN1. The court recognizes that the scope of discovery allowed at bar is relatively broad and potentially prejudicial to plaintiffs. Therefore, rather than requiring disclosure consistent with this order at this time, the court will bifurcate the issue of willfulness, stay discovery relating to willfulness, and conduct a separate trial with a new jury in the event plaintiffs are found to infringe valid patents. See *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.,* No. 00-800-JJF, 2002 WL 576088, at *3 n. 2 (D.Del. Mar. 28, 2002).

3. Plaintiffs' motion to compel the production of documents withheld under the common legal interest doctrine (D.I.99) is denied as untimely. The parties agreed to exchange their privilege logs on January 23, 2002. By stipulation filed on March 11, 2002, the discovery cutoff date was extended to March 15, 2002. Plaintiffs filed the instant motion on April 8, 2002. Motions that relate to fact discovery must be filed during fact discovery, especially where, as here, the underlying facts relating to the motion were known to plaintiffs in January 2002. Therefore, the court declines to address the motion on its merits.

*3 4. Plaintiffs' motion for leave to file a sur-reply brief (D.I.96) is denied as moot.

Not Reported in F.Supp.2d, 2002 WL 1268047 (D.Del.)

**Motions, Pleadings and Filings** (Back to top)

• 1:01CV00141 (Docket) (Mar. 01, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ELI LILLY AND COMPANY,                    )
                                          )
              Plaintiff,                   )
                                          )
        vs.                               )     IP 96-0419-C-B/S
                                          )
BARR LABORATORIES, INC.,                  )
APOTEX, INC., INTERPHARM, INC.,           )
BERNARD C. SHERMAN and GENEVA             )
PHARMACEUTICALS, INC.,                    )
                                          )
              Defendants.                 )

## ENTRY

This matter comes before the Court on (1) a motion by Plaintiff Eli Lilly and

Company ("Lilly") to amend the complaint to add a claim for willful infringement, (2) a

motion by Defendant Barr Laboratories, Inc ("Barr") for bifurcation of the issues of

liability and the willful infringement claim under Federal Rule of Civil Procedure 42(b)

and a stay of discovery on the willful infringement claim[1] and (3) Lilly's motion to deem

admitted a fact establishing infringement by Geneva. This case involves complex issues

of intellectual property law and scientific and technological evidence and is set for trial in

January 1999, a mere three months away. Barr's primary objection to Lilly's motion to

amend the complaint is for reasons of undue prejudice, as addressed more fully in Barr's

---

[1] We note that Defendant Geneva Pharmaceuticals, Inc. ("Geneva") joins in Barr's motion
to bifurcate in its objection to Lilly's motion to amend.

motion to bifurcate the issues of liability and willful infringement. Thus, we find it most efficient to address Barr's motion to bifurcate first.

Rule 42(b) provides, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim . . ., or of any separate issue . . ., always preserving inviolate the right of trial by jury . . . ." Barr moves for bifurcation, arguing that Lilly's raising this new claim so late in the litigation of the case will prejudice Barr, that there is not sufficient time to prepare the willful infringement claim and defenses for the scheduled January 1999 trial date, that presentation of evidence regarding willful infringement will confuse the trier of fact unnecessarily and that Lilly will not be prejudiced by separate trials and a stay of discovery. Lilly asserts that bifurcation will result in "an immense waste of resources and duplication of effort" and evidence. See Plaint. Opp. Bifurc. at 1.

Having considered the parties' arguments on this issue in their briefs and the facts in this case, we conclude that the newly-raised claim of willful infringement should be tried separately from the issue of liability and that discovery on the willful infringement claim should be stayed until the liability phase of this case is complete (1) to avoid undue prejudice to Barr, (2) to prevent forcing Barr to choose between the advice of counsel defense to willful infringement and asserting attorney-client privilege, as would be implicated in this case, and (3) in the interests of judicial economy and efficiency. See,

2

e.g., Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991); Princeton

Biochemicals, Inc. v. Beckman Instrumentals, Inc., 45 U.S.P.Q.2d 1757, 1761 (D.N.J.

1997); In re Recombinant DNA Technology Patent and Contract Litigation, 30

U.S.P.Q.2d 1881, 1900 (S.D. Ind. 1994). Accordingly, we grant Barr's motion to

bifurcate liability and willful infringement and stay discovery on the willful infringement

claim until liability for infringement has been determined.

Having disposed of Barr's concerns regarding prejudice, we now turn to Lilly's

motion to amend the complaint. Geneva and Barr both object to Lilly's motion,

contending that Lilly fails to state a claim of willful infringement, arguing that the filing

of an Abbreviated New Drug Application ("ANDA") cannot give rise to an allegation of

willful infringement. After considering the parties' arguments and supporting authority,

we conclude that it is by no means clear that Lilly's willful infringement claim is futile

and that further factual development is necessary to determine the merits of Lilly's claim.

See, e.g., Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc., 1998 WL 696011

(S.D.N.Y. Oct. 1, 1998). Thus, we grant Lilly's motion to amend the complaint.

However, Defendants may want to reassert their objections later in the event that the

willful infringement claim remains viable after liability has been determined.

Lilly also seeks an order deeming admitted a fact establishing Geneva's

infringement of claim 7 of Lilly's '549 patent. Lilly claims that Geneva's response to

Lilly's third set of interrogatories constitutes an admission of infringement. This issue is

somewhat complicated because it does not appear that Geneva disputes infringement, precisely, but only challenges the use of its response to Lilly's interrogatories. It seems as though if Lilly simply had asked Geneva in its interrogatories to admit infringement of claim 7 of the '549 patent in the same language Lilly uses with respect to claim 5 of the '081 patent, Lilly may have received the admission it sought. Rather, Lilly appears to have been fishing for some broader type of admission relevant to other of its claims or defenses, which strategy Geneva resisted. Geneva's response may well constitute an admission of infringement of claim 7, but we find that this is an evidentiary dispute more properly resolved at trial. Lilly should proffer the evidence at trial, proposing it as an admission by Geneva, and it will be for the trier of fact, whether it be a jury or this Court, to conclude whether Geneva's response constitutes an admission of infringement. Accordingly, we deny Lilly's motion at this time. However, we encourage Lilly and Geneva to attempt to reach a stipulation before trial as to any issues that are not genuinely in dispute, such as whether Geneva admits infringement of claim 7, to save the Court from trying the issue of infringement unnecessarily.

Lilly also requests temporary ancillary relief from filing an expert report on infringement issues. Such report was due on August 14, 1998, which date was extended by the Court to August 21, 1998, and Lilly requested additional time to file its report until after the Court disposed of the motion to deem admitted the fact establishing infringement by Geneva. If Lilly has not already submitted its expert report on this issue, it should do

4

so no later than November 20, 1998, three weeks from the date of this entry, if it finds such report necessary after the Court's ruling and after attempting to enter into a stipulation with Geneva.

For the reasons set forth above, we grant Lilly's motion to amend, grant Barr's motion for bifurcation and stay of discovery and deny Lilly's motion to deem admitted Geneva's infringement.

It is so ORDERED this __29th__ day of October 1998.

_Sarah Evans Barker_
SARAH EVANS BARKER, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copy to:

π Jan M Carroll
Barnes & Thornburg
1313 Merchants Bank Bldg
11 South Meridian Street
Indianapolis, IN 46204

π Simon D Roberts
Shanks & Herbert
1033 North Fairfax Street
Suite 306
Alexandria, VA 22314

π Allen M Sokal
Finnegan Henderson Farabow Garrett
& Dunner LLP
1300 I Street N W Suite 700
Washington, DC 20005-3315

Thomas L Davis
Locke Reynolds Boyd & Weisell
1000 Capital Center South
201 North Illinois Street
Indianapolis, IN 46204

Hugh L Moore
Lord Bissell & Brook
115 South LaSalle Street
Chicago, IL 60603

Robert Neuner
Brumbaugh Graves Donohue &
Raymond
30 Rockefeller Plaza
New York, NY 10112

5

Dennis P Orr
Mayer Brown & Platt
1675 Broadway
New York, NY 10019-5820

James W Riley Jr
Riley Bennett & Egloff
One American Square Suite 1810
Box 82035
Indianapolis, IN 46282

Maurice B Stiefel
Bryan Cave
245 Park Avenue
New York, NY 10167

Mary Titsworth Chandler
Wooden McLaughlin & Sterner
201 N. Illinois Street
Indianapolis, IN 46204

Dan K Webb
Winston & Strawn
35 West Wacker Dr
Chicago, IL 60601

6

# EXHIBIT  8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

BAYER AG and MILES, INC.,

      Plaintiffs,

  - against -

BARR LABORATORIES, INC.,

          Defendant.
----------------------------------------X



**MEMORANDUM AND ORDER**
92 Civ. 0381 (WK)

WHITMAN KNAPP, SENIOR D.J.

  Having carefully considered defendant's "Memorandum in
Opposition to Plaintiffs' Request for Discovery of Privileged
Materials"; plaintiffs' "Memorandum of Law in Opposition to
Defendant's Request to Bifurcate Trial"; and defendant's "Reply
Memorandum in Further Opposition to Plaintiffs' Request," we grant
defendant's motion to bifurcate trial; and we stay all discovery
regarding the issues of "willful infringement" and attorneys' fees
until after the question of defendant's liability has been
resolved.

SO ORDERED.

September 11, 1995
New York, New York

                                _____
                                WHITMAN KNAPP, SENIOR U.S.D.J.

MICROFILM -12:00 PM

SEP 12 1995

1

For Plaintiff:

Milton Sherman, Esq.
Kaye, Scholer, Fierman, Hays & Handler
425 Park Avenue
New York, NY  10022

For Defendant:

Myron Cohen, Esq.
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY  10176

2

# EXHIBIT   9

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)
**(Cite as: 2002 WL 1901268 (D.Del.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
ST. CLAIR INTELLECTUAL PROPERTY
CONSULTANTS, INC., Plaintiff,
v.
SONY CORPORATION, Sony Electronics, Inc., and
Sony Corporation of America,
Defendants.
**No. Civ.A.01-557-JJF.**

Aug. 16, 2002.

Frederick L. Cottrell, III and Thomas H. Kovach, of
Richards, Layton & Finger, Wilmington, Delaware.
Ronald J. Schutz, Jake M. Holdreith, Becky R.
Thorson, and Carrie M. Smith, of Robins, Kaplan,
Miller & Ciresi, L.L.P., Minneapolis, Minnesota, for
Plaintiff, of counsel.

Josy W. Ingersoll and Adam W. Poff, of Young
Conaway Stargatt & Taylor, L.L.P., Wilmington,
Delaware. Sidney David, Joseph S. Littenberg,
Jonathon A. David, Jeffrey S. Dickey, and April M.
Mayo, of Lerner, David, Littenberg, Krumholz &
Mentlik, L.L.P., Westfield, New Jersey, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before the Court is a Motion For
Bifurcation Of Liability And Damages/Willfulness
Issues And For A Stay Of Discovery Regarding
Damages/Willfulness Issues (D.I.43) filed by
Defendants Sony Corporation, Sony Electronics, Inc.,
and Sony Corporation of America (collectively
"Sony"). For the reasons set forth below, Sony's
Motion will be granted in part and denied in part.

I. BACKGROUND

This is a patent infringement action in which
Plaintiff St. Clair Intellectual Property Consultants,
Inc. (hereinafter "St. Clair") alleges that Sony
willfully infringes four of St. Clair's patents by
manufacturing, using and selling numerous models of

digital camcorders and still cameras. (D.I. 44 at 1).
Sony answers these allegations by denying
infringement, claiming the patents are invalid, and
asserting a laches defense. Sony also asserts
counterclaims, including patent misuse and unfair
competition. [FN1] (D.I. 44 at 1).

> FN1. Originally, Sony also pleaded the
> defense of estoppel. (D.I. 44 at 1). However,
> Sony has since withdrawn this defense. (*See*
> D.I. 47 at 1).

On March 28, 2002, after discovery had commenced
in this action, the Court issued a decision in *Novartis
Pharmaceuticals Corp v. EON Labs Mfg., Inc.,* 206
F.R.D. 396 (D.Del.2002). As a result of the *Novartis*
decision, Sony filed the instant Motion (D.I.43)
pursuant to Federal Rule of Civil Procedure 42(b),
seeking to bifurcate the issues of damages and willful
infringement from the other issues in this case.

On July 17, 2002, the Court heard argument on
Sony's Motion. During the course of the argument,
Sony's counsel represented that Sony intends to rely
on opinions of counsel in defense of St. Clair's
willfulness claim. (D.I.80). At the close of the parties'
arguments, the Court denied Sony's Motion to the
extent it pertains to damages, and ordered Sony's
counsel to provide the opinion letters Sony intends to
rely upon for an *in camera* review. [FN2] (D.I.80).

> FN2. The Court agrees with St. Clair that
> Sony will not suffer any undue prejudice if
> the liability and damages issues are not
> bifurcated.

On August 1, 2002, the Court received Sony's
opinion letters, as well as other related documents,
and has since reviewed them. This Memorandum
Opinion will address whether separation of St. Clair's
willfulness claim is warranted in the circumstances of
this case.

II. DISCUSSION

Counsel for Sony contends that the discovery
required by *Novartis* in the circumstances of this case
(i.e. that Sony has elected to present a reliance on
advice of counsel defense in response to St. Clair's
charge of willfulness, and the fact that Sony's trial
counsel authored the legal opinion relied upon)

requires that the issue of willfulness be separated for both discovery and trial. (D.I. 44 at 2-4). Specifically, Sony's counsel represents that communications occurred between Sony and its counsel which relate to issues other than willfulness as well as strategies that Sony might undertake with regard to those issues. (D.I. 44 at 2; D.I. 80). According to Sony, in the event the Court fails to separate the issue of willfulness, the disclosure of these communications to St. Clair will result in undue prejudice to Sony. (D.I. 44 at 2-4).

In response, St. Clair contends that separation of the willfulness issue is not warranted in this case. (D.I. 45 at 4). Specifically, St. Clair contends that separation would result in delay and wasteful duplication of discovery. (D.I. 45 at 11-13).

**\*2** After reviewing the documents submitted by Sony, the Court finds that undue prejudice could result if these otherwise privileged documents were exchanged and used during the trial of the infringement and validity issues. Neither Sony nor St. Clair had the benefit of the Court's *Novartis* decision when Sony engaged counsel to obtain an infringement opinion. Sony and trial counsel conducted their dialogue without the knowledge that their communications on matters other than infringement could be revealed in litigation. For these reasons, the Court is sensitive to Sony's prejudice claim and will separate willfulness from the other patent issues for both discovery and trial.

## III. CONCLUSION

For the reasons set forth above, the Court will grant Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to willfulness and deny Sony's Motion For Bifurcation (D.I.43) to the extent it pertains to damages.

An appropriate Order will be entered.

### ORDER

At Wilmington this 16th day of August, 2002, for the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Sony's Motion (D.I.43) to bifurcate the issue of willfulness for both discovery and trial is *GRANTED;*

2. Sony's Motion (D.I.43) to bifurcate the issue of damages is *DENIED;*

3. Discovery on the issue of willfulness is *STAYED* pending resolution of the issues of infringement, validity, and damages.

Not Reported in F.Supp.2d, 2002 WL 1901268 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

•              1:01cv00557              (Docket) (Aug. 14, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   10

*206*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ARTHROCARE CORPORATION,      )
                             )
            Plaintiff,       )
                             )
      v.                     )      C.A. No. 01-504-SLR
                             )
SMITH & NEPHEW, INC.,        )
                             )
            Defendant.       )

MEMORANDUM ORDER

At Wilmington this 27th day of November, 2002; having

reviewed the papers submitted by the parties in connection with

various motions filed by defendant;

IT IS ORDERED that defendant's motion to stay pending

reexamination (D.I. 187) is denied, for the reasons that follow:

1.   The United States Court of Appeals for the Federal

Circuit recognizes that "[c]ourts have inherent power to manage

their dockets and stay proceedings . . . ., including the authority

to order a stay pending conclusion of a PTO reexamination."

Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988)

(citations omitted).   Courts clearly have the authority to order

their cases to trial.

2.   The Federal Circuit also has recognized that patent

litigation in a district court and reexamination proceedings

before the PTO do not implicate a "precise duplication of effort" because "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes." Id. at 1427.

3. Given the court's view that its primary purpose is to manage litigation in an expeditious manner in order to create an appropriate record (through motion practice or trial) for review by the Federal Circuit, the court generally will not stay its cases pending reexamination proceedings absent extraordinary circumstances. In this case, where only one of the three patents is undergoing reexamination, where the patents at issue relate to an evolving and highly competitive market, and where the reexamination proceedings to date have not been conducted with what the court would consider "special dispatch", the court declines to find this an exceptional case warranting a stay. The court understands that, prior to trial, the PTO may issue rulings that will need to be considered, thus causing some inefficiencies in the pretrial and trial process. Nevertheless, the court concludes that such inefficiencies are an inherent byproduct of concurrent litigation and reexamination and, therefore, do not constitute exceptional circumstances justifying a stay of the litigation at bar.

2

IT IS FURTHER ORDERED that defendant's motion to bifurcate willfulness and damages and to stay discovery (D.I. 107) is granted.  Discovery on the issues of willfulness and damages will be stayed until after the verdict on infringement and invalidity has been returned; these issues will be tried to a new jury.

IT IS FURTHER ORDERED that defendant's claim of privilege pertaining to redactions in certain documents (D.I. 190) is denied.  The court finds that the information redacted is equivalent to the information required to be included in a privilege log, and thus not privileged information.

IT IS FURTHER ORDERED that defendant's second motion for leave to amend answer and counterclaim (D.I. 111) is granted.  However, discovery and trial of defendant's newly added counterclaim for antitrust violations are stayed consistent with the above ruling on the issues of damages and willfulness.

IT IS FURTHER ORDERED that defendant's motion for reargument is denied, as is its motion to strike.  (D.I. 160, 172)

_____
United States District Judge

3

# EXHIBIT   11



Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 406193 (S.D.N.Y.)
**(Cite as: 2001 WL 406193 (S.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
THE TOPPS COMPANY, INC. Plaintiff,
v.
PRODUCTOS STANI SOCIEDAD ANOMINA
INDUSTRIAL Y COMMERCIAL and Cadbury
Stani
S.A.I.C., Defendants.
**No. 99 Civ. 9437(CSH)(GWG).**

April 20, 2001.
Ingram, Yuzek, Gainen, Carroll & Bertolotti, LLP,
New York, New York, By: David G. Ebert, for
plaintiff.

Morgan, Lewis & Bockius, LLP, New York, New
York, By: Richard A. Mescon and Joseph P. Leon,
for Defendants.

*OPINION AND ORDER*

GORENSTEIN, Magistrate J.

**\*1** In this case, plaintiff The topps Company, Inc.
("Topps") alleges that the defendants Productos Stani
Sociedad Anomina Industrial y Commercial and
Cadbury Stani S.A.I.C. (collectively, "Stani")
breached a licensing agreement and misappropriated
trade secrets regarding chewing gum products. One
of the issues in the case is whether and to what extent
Stani continued to use Topps' recipes, formulas and
ingredients specifications after the expiration of the
parties' license agreement. Two motions are before
the court, both brought by Topps. In the first motion,
Topps seeks an order resolving an objection that was
raised by Stani to Topps' retention of an expert
witness. In the second motion, Topps seeks an order
compelling depositions of defendants' corporate
officers to take place in New York rather than
Argentina. Each motion is treated separately.

*Retention of Expert Witness*

The motion regarding the expert witness has arisen
because under a confidentiality agreement entered

into by the parties Topps was required to furnish to
Stani an "Undertaking Concerning Confidential and
Protected Material" for any independent experts or
consultants retained by the parties for the litigation.
Topps furnished such an undertaking from a Robert
Boutin, along with his curriculum vitae. Stani
thereupon objected to Topps' designation of Mr.
Boutin. Topps brought the instant motion seeking an
order "resolving" this objection.

Although Topps is before the Court as movant, the
motion in fact boils down to an application by Stani
to have the Court disqualify Mr. Boutin from serving
as an expert for Topps. The law governing such
motions normally employs a two-part test: (1)
whether it was objectively reasonable to have
believed a confidential relationship existed with the
expert and (2) whether confidential information was
actually disclosed to the expert. *See, e.g., In re
Ambassador Group, 879 F.Supp. 237, 242
(E.D.N.Y.1994); Mayer v. Dell, 139 F.R.D. 1, 3
(D.D.C.1991); Palmer v. Ozbek, 144 F.R .D. 66, 67
(D.Md.1992).* Although Topps has brought the
instant motion, the burden of proving the existence of
a disqualifying condition rests on Stani inasmuch as
their response seeks to disqualify an expert witness.
*See, e.g., Cordy v. Sherwin-Williams, 156 F.R.D.
575, 580 (D.N.J.1994); English Feedlot, Inc. v.
Norden Laboratories, 833 F.Supp. 1498, 1502
(D.Colo.1993) (citing Mayer v. Dell, 139 F.R.D. at
3).*

Some facts are undisputed: Stani was Topps' licensee
for many years, from at least the late 1950's until
1996. Topps got Stani started in the gum
manufacturing business and, as part of this process,
shared confidential information with Stani. Topps
originally employed Mr. Boutin as a consultant and
referred Mr. Boutin to Stani in 1993 when Stani
sought advice in changing its process. Mr. Boutin
consulted with Stani for some period of time
beginning in 1993.

What is in dispute is whether this consultation
involved Stani's sharing of confidential material with
Mr. Boutin. To support its contention that such
confidential information passed between Stani and
Mr. Boutin, Stani provides a single affidavit from a
Stani employee that states without elaboration that
"Mr. Boutin received significant disclosures of
confidential information regarding the process and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 406193 (S.D.N.Y.)
**(Cite as: 2001 WL 406193 (S.D.N.Y.))**

Page 2

raw materials used by Stani in the manufacture of gum base, including Stani's sources of supply, local manufacturing conditions, ingredient specifications, recipes, machinery, factory layout, and production methods." *Affidavit of Carlos A. Cubau,* Director of Operations for Stani, dated March 2, 2001, ¶ 4. Although this document was filed under seal, not a single example is given of (1) a specific piece of information that was transmitted to Boutin, (2) by whom such information was given or (3) on what date it was given. [FN1]

> FN1. Mr Cubau does append documents showing that Mr. Boutin *requested* information about specifications for gum base and other production data. These documents are irrelevant, however, because they do not show that Mr. Boutin received any information. Moreover, Mr. Boutin states in a reply affidavit that he has no recollection of receiving such information and has found no documents containing such information in his files. *Reply Affidavit of Robert Boutin,* dated March 12, 2001, ¶ 3.

**\*2** For his part, Mr Boutin has sworn that he received no such confidential information from Stani. He states that, in connection with his projects at Stani, "I shared with Stani *my* formulas and *my* technical knowledge regarding these gum base forms (which were then being used by others in the industry)." *Affidavit of Robert F. Boutin,* dated February 24, 2001, ¶ 4 (emphasis in original). He also stated that "Stani was extremely secretive and provided me with no confidential or proprietary information or formulations relating to its processes or products." *Id.* ¶ 5. [FN2]

> FN2. At oral argument, the Court pointed out the deficiency in Stani's proof that they passed confidential information on to Mr. Boutin. Nonetheless, Stani did not seek an evidentiary hearing on this issue, stating instead that they would rely on their written submissions.

Stani's central argument appears to be that it would be improper for any consultant who worked with Stani on the gum base technologies to serve as an expert in litigation for an adversary. They point to the "inevitable disclosure" doctrine, under which it is assumed that an individual who has received confidential information cannot be expected to forget such information when serving as an expert in litigation. *See generally Pepsico, Inc. v. Redmond,* 54

F.3d 1262 (7th Cir.1995). As Stani's counsel put it at oral argument, the "atmospherics" of the issue counsel against permitting Mr. Boutin to serve as Topps' expert.

Understandably, courts have been concerned that allowing a party to retain an individual privy to an adversary's confidential information will result in an "appearance of impropriety" sanctioned by a court. *See, e.g., Stanford v. Kuwait Airways Corp.,* 1989 WL 297860 (S.D.N.Y.1989). But, in addition to the fact that there has been no showing that confidential information actually passed to Mr. Boutin, many of the factors that usually arise in the case law are completely absent here. For example, this is not a dispute between two competitors. Rather, Stani was Topps' licensee for many years. There are numerous documents in the record showing that Stani repeatedly shared information with Topps relating to Stani's manufacturing processes and formulas, including those for gum base. Nor was Mr. Boutin ever an employee of Stani. Indeed, Topps had a relationship with Mr. Boutin that pre-dated Stani's own relationship. Finally, the information at issue relates to processes that originally were given by Topps to Stani. Significantly, it was to provide assistance with these very processes that Topps had originally referred Mr. Boutin to Stani. These facts suggest that there will be no appearance of impropriety resulting from Topps' retention of Mr. Boutin as an expert.

Another factor strongly weighing against Stani is the apparent dearth of experts in gum-base technology. Mr. Boutin submitted an affidavit on this subject, which is not contradicted. He states that

> [t]here are very few people in the world who are knowledgeable in the area of chewing gum. There are even fewer who are knowledgeable in the area of gum base.... I teach in this field, and know of no text books on either chewing gum or gum base.... Stani is a major "player" in the chewing gum industry and I would expect that it would be extremely difficult for Topps (or anyone else) to find a competent consultant who has *not* performed services for Stani or one of its affiliated entities.

**\*3** *Affidavit of Robert F. Boutin,* dated February 24, 2001, at ¶ ¶ 7-8. This assertion was consistent with the assertion of Topps' counsel who stated that the only other expert he contacted had also done consulting work for Stani. *Affidavit of David G. Ebert,* dated February 28, 2001, at ¶ 13. Thus, this is not a case where there are an abundance of experts from which to chose were Mr. Boutin to be disqualified.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2001 WL 406193 (S.D.N.Y.)
**(Cite as: 2001 WL 406193 (S.D.N.Y.))**

In sum, the record presented to the Court does not meet Stani's burden of showing that Mr. Boutin should be disqualified. Accordingly, the Court rejects Stani's objections to Topps' selection of Mr. Boutin as an expert. Topps' motion is thus granted.

*Location of Depositions*

The second motion in this case is brought by Topps to compel certain officers of Stani to appear for depositions in New York. There is no dispute that these individuals have been properly designated under Fed.R.Civ.P. 30(b)(6). The sole question is the location of these depositions.

As Stani properly points out, there is a presumption that the deposition of a defendant will take place at the location of the defendant's residence. *See, e.g., Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. 547, 550 (S.D.N.Y.1989). This presumption is based on the notion that the plaintiff, having brought litigation and having exercised a choice as to where it would be conducted, cannot be heard to complain that a deposition is taking place in an inconvenient location. *See, e.g., Farquhar v. Shelden,* 116 F.R.D. 70, 72 (E.D.Mich.1987).

This presumption is defeated, naturally, where a plaintiff is constrained to choose a particular forum. *See, e.g., Devlin v. Transportation Communications International Union,* 2000 WL 28173 (S.D.N.Y.2000); *Doe v. Karadzic,* 1997 WL 45515 (S .D.N.Y.1997). In this case, there existed a clause in the agreement at issue in this suit providing that:
    This Agreement shall be deemed to have been made, entered into, and finally executed and delivered, in New York, New York, which execution and delivery are hereby acknowledged by both parties hereto, and all rights and duties of the parties hereby shall be governed, controlled, interpreted and defined by and under the laws of the State of New York, without giving effect to rules relating to conflicts of laws, entirely independent of the forum in which this Agreement or any part thereof may come up for construction, interpretation or enforcement. STANI hereby consents to the jurisdiction of the New York federal and state courts for the purpose of resolving any dispute, unless otherwise herein provided, which may arise under this Agreement, and agrees that process in any proceeding commenced hereunder may be made by mail in accordance with the provisions of clause 30.
While the plaintiff characterizes this clause as a

forum-selection clause, it is not clearly so worded. The clause provides only that the defendants consent to jurisdiction in New York and that New York law will apply. In the context of fixing the place of a deposition, it cannot have the same force as a true forum selection clause since the litigation theoretically could have been brought anywhere, including Argentina. The clause does not clearly put the defendants on notice that it would suspend the usual presumption that defendants will be deposed at their residence. On the other hand, Stani was certainly on notice when they signed the agreement that they could expect to be haled into a New York court should there be any litigation regarding the agreement. Accordingly, travel to New York on their part--for example, to appear as witnesses at trial on behalf of the defendant--cannot be said to have been an unforeseeable eventuality. Nonetheless, the Court is prepared to accord a slight--albeit defeasible--presumption in favor of the depositions' occurring in Argentina

**\*4** Turning to costs and convenience, *see Mill-Run Tours, Inc. v. Khashoggi,* 124 F.R.D. at 550-51, neither side seems to have the stronger hand. The choice is to have two attorneys (and perhaps a court reporter) go to Argentina as opposed to three individuals come to New York. There is certainly inconvenience to counsel in traveling to Argentina; but there is presumably also inconvenience to the three individuals who hold important positions with Stani. The plaintiff has also raised the issue of documents that may be needed during the deposition. While documents may be located here in New York, it is unclear why plaintiff's counsel could not prepare any needed documents in advance and bring them to Argentina. If counsel diligently prepares such documents, and it turns out during the deposition that a critical document was unavailable, the plaintiff has leave to apply to the Court for an appropriate remedy.

All in all, the cost and convenience analysis is insufficient to outweigh the slight presumption accorded the defendant on this question. Accordingly, the Court will order that these three depositions take place in Argentina.

Nonetheless, given the closeness of this question and the fact that Stani clearly understood that New York courts would have jurisdiction over this matter, the Court makes the following additional provision: Topps shall have the option of requiring Stani to bear the burden of ensuring that a qualified court reporter appears at the deposition. Should Topps opt to place this burden on Stani, Stani may choose either to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 406193 (S.D.N.Y.)
**(Cite as: 2001 WL 406193 (S.D.N.Y.))**

Page 4

arrange for the presence of a court reporter located currently in Argentina or may arrange to have one brought from the United States (provided a court reporter's entry for this purpose is consistent with the laws of Argentina). In the event that Topps gives Stani responsibility for making this arrangement, any expenses for securing the presence of a court reporter from the United States, including but not limited to any travel or lodging expenses, shall be paid for by Stani.

Should a reporter be located in Argentina, a United States consular official will presumably be required to administer the appropriate oath. In such event, Topps shall also have the option of requiring Stani to arrange for the presence of an official to administer this oath.

Finally, at the conclusion of the case, the reasonable travel and lodging costs of the plaintiff's attorney for the taking of these depositions shall be taxed as costs in the event the plaintiff is awarded costs.

The parties are free to stipulate to any other arrangement for these depositions without seeking leave of the Court.

SO ORDERED.

Not Reported in F.Supp.2d, 2001 WL 406193 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

•          1:99cv09437                    (Docket) (Sep. 02, 1999)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT   12



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3019766 (S.D.N.Y.)
**(Cite as: 2004 WL 3019766 (S.D.N.Y.))**

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
In re VIVENDI UNIVERSAL, S.A. SECURITIES
LITIGATION
No. 02 Civ.5571 RJH.

Dec. 30, 2004.

*MEMORANDUM OPINION AND ORDER*

HOLWELL, J.

*1 On November 2, 2004, plaintiffs served Vivendi with a Notice of Deposition pursuant to Fed.R.Civ.P. 30(b)(6) requesting that Vivendi designate for testimony the person or persons most knowledgeable about certain aspects of Vivendi's information technology systems. By letter dated December 13, 2004, plaintiffs ask the Court to compel Vivendi to produce those employees for deposition in the United States pursuant to the Federal Rules of Civil Procedure. In response, Vivendi notes that it has already designated two information technology employees to testify, both of whom work and reside in France. Thus, Vivendi argues that the 30(b)(6) depositions should be conducted in France pursuant to Chapter II of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention").

Although "[t]he Hague Convention is not the exclusive means for obtaining discovery from a foreign entity," *First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 21 (2d Cir.1998), courts are free to determine based on the facts of a particular case that it is "more appropriate to take discovery abroad under the Hague Convention." *Madanes v. Madanes,* 199 F.R.D. 135, 140 (S.D.N.Y.2001). Under Rule 30(b)(6), there is a general "presumption that the deposition of a [witness] will take place at the location of the [witness'] residence." *Six West Retail Acquisition v. Sony Theatre Management Corp.,* 203 F.R.D. 98, 107 (S.D.N.Y.2001). Plaintiffs have not demonstrated circumstances sufficient to justify

departing from that presumption in this case. Both parties are well positioned to bear whatever cost and inconvenience is associated with taking depositions abroad, and plaintiffs offer no further justification for their argument that depositions should be conducted in the United States.

Accordingly, the Court holds that the employees previously designated by Vivendi in response to plaintiffs' November 2, 2004 Notice of Deposition shall be deposed in France pursuant to Chapter II of the Hague Convention. Such depositions shall be conducted at the earliest reasonable opportunity.

SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 3019766 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2004 WL 1879036 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Jean-Marie Messier's Motion for Reconsideration Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules for the Southern District of New York (Dec. 16, 2004)

• 2004 WL 613098 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Vivendi Universal, S.A.'s Motion to Dismiss Count IV of the First Amended Consolidated Class Action Complaint (Feb. 04, 2004)

• 2004 WL 1615204 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Vivendi Universal, S.A.'s Motion to Dismiss Count IV of the First Amended Consolidated Class Action Complaint (Jan. 27, 2004)

• 2004 WL 937915 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Vivendi Universal, S.A.'s Motion to Dismiss Count IV of the First Amended Consolidated Class Action Complaint (Jan. 27, 2004)

• 2004 WL 613095 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Defendant Vivendi Universal S.A.'s Motion to Dismiss Count IV of the First Amended

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2004 WL 3019766 (S.D.N.Y.)
**(Cite as: 2004 WL 3019766 (S.D.N.Y.))**

Consolidated Class Action Complaint (Jan. 20, 2004)

• 2004 WL 1615203 (Trial Motion, Memorandum and Affidavit) Defendant Vivendi Universal, S.A's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents Previously Produced to Governmental and Regulatory Authorities, Including Deposition Transcripts (Jan. 14, 2004)

• 2004 WL 868575 (Trial Motion, Memorandum and Affidavit) Defendant Vivendi Universal, S.A's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents Previously Produced to Governmental and Regulatory Authorities, Including Deposition Transcripts (Jan. 14, 2004)

• 2004 WL 937913 (Trial Motion, Memorandum and Affidavit) Defendant Vivendi Universal, S.A's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel Defendants' Production of Documents Previously Produced to Governmental and Regulatory Authorities, Including Deposition Transcripts (Jan. 14, 2004)

• 2003 WL 23724684 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Guillaume Hannezo's Motion for Partial Reconsideration (Dec. 18, 2003)

• 2003 WL 23305556 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Jean-Marie Messier's Motion for Reconsideration Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules for the Southern District of New York (Dec. 16, 2003)

• 2003 WL 23724683 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Defendant Vivendi Universal, S.A.'s Motion for Reconsideration of the Court's November 6, 2003, Opinion and Order (Dec. 16, 2003)

• 2003 WL 23724679 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Vivendi Universal, S.A.'s Motion for Reconsideration (Dec. 08, 2003)

• 2003 WL 23724682 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Jean-Marie Messier's Motion for Reconsideration and Guillame Hannezo's Motion for Partial Reconsideration (Dec. 08, 2003)

• 2003 WL 23724678 (Trial Motion, Memorandum and Affidavit) Defendant Vivendi Universal, S.A.'s Memorandum of Law in Opposition to Plaintiffs' Motion for Reconsideration and Clarification (Dec. 04, 2003)

• 2003 WL 23724677 (Trial Pleading) First Amended Consolidated Class Action Complaint (Nov. 24, 2003)

• 2003 WL 23724673 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Jean-Marie Messier's Motion for Reconsideration Pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Rule 6.3 of the Local Rules for the Southern District of New York (Nov. 21, 2003)

• 2003 WL 23724675 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Guillaume Hannezo's Motion for Partial Reconsideration (Nov. 21, 2003)

• 2003 WL 23724676 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Vivendi Universal, S.A.'s Motion for Reconsideration of the Court's November 6, 2003, Opinion and Order (Nov. 21, 2003)

• 2003 WL 23724669 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Guillaume Hannezo's Motion to Dismiss the Liberty Media Complaint (Oct. 11, 2003)

• 2003 WL 23724668 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Defendant Jean-Marie Messier's Motion to Dismiss the Complaint (Oct. 10, 2003)

• 2003 WL 23724667 (Trial Motion, Memorandum and Affidavit) Defendant Vivendi Universal, S.A.'s Memorandum of Law in Opposition to GAMCO Investors, Inc.'s Motion for Relief from the Order of Consolidation (Oct. 07, 2003)

• 2003 WL 23724666 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion of GAMCO Investors, Inc. for Relief from the Order of Consolidation (Sep. 18, 2003)

• 2003 WL 23724665 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Jean-Marie Messier's Motion to Dismiss

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 3019766 (S.D.N.Y.)
**(Cite as: 2004 WL 3019766 (S.D.N.Y.))**

Page 3

the Complaint (Aug. 04, 2003)

• 2003 WL 23724662 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendants Vivendi Universal, S.A. and Universal Studios, Inc.'s Motion to Dismiss the Complaint (Jul. 28, 2003)

• 2003 WL 23724660 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Defendant Vivendi Universal, S.A.'s Motion to Dismiss the Consolidated Class Action Complaint (Mar. 27, 2003)

• 2003 WL 23724661 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Law in Opposition to Vivendi Universal S.A.'s Motion to Dismiss (Mar. 26, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.